*Ex parte* FARLEY.

*Ex parte* WILSON.

(*Circuit Court, W. D. Arkansas.* October 14, 1889.)

1. HABEAS CORPUS—JURISDICTION OF UNITED STATES COURT.
    A United States circuit or district court, or any judge thereof, may issue a writ of *habeas corpus* in every case where it is alleged a party is restrained of his liberty anywhere in the territorial jurisdiction of such courts without due process of law, or against the constitution or laws of the United States. This may be done by an order or proceeding of a state court, or any United States court, or by a person acting outside of a court.

2. SAME—REVIEW.

By a *habeas corpus* proceeding the jurisdiction of a court trying a person may be inquired into, and the court having power to issue the writ will look into so much of the proceedings as will enable it to determine whether jurisdiction exists or not.

3. COURTS—JURISDICTION.

Jurisdiction in a court to try a case means jurisdiction over the place, the person, and the thing, or the subject-matter. That there may be subject-matter there must be an act that is a crime, and this act must be properly and legally presented before a court.

4. SAME—FEDERAL JURISDICTION.

All courts of the United States are creatures of the constitution and laws of the United States, and have only such jurisdictional powers as are conferred by the constitution and laws of the United States.

5. SAME—COURTS IN INDIAN TERRITORY—GRAND JURY.

The United States court at Muskogee, Indian Territory, has no power to impanel a grand jury, as no such power is given by the act creating it, and section 808 of the Revised Statutes of the United States has reference only to United States circuit or district courts, and the court at Muskogee is neither. The power to impanel a grand jury is not an inherent power of a court of the United States, but is derived from the statutes.

6. STATUTES—CONSTRUCTION.

In construing the meaning of a law the court may consider the statements of those who had charge of the act as to the meaning and purpose of the act made to the legislative body passing it.

7. INDICTMENT AND INFORMATION—ILLEGAL GRAND JURY.

The grand jury impaneled by the United States court at Muskogee was impaneled without authority of law, and was an illegal body. An indictment found by it would be simply a nullity.

8. SAME—DUE PROCESS OF LAW.

A person convicted and sentenced to imprisonment for larceny upon such an indictment would be illegally convicted and sentenced, and is therefore restrained of his liberty without due process of law, and contrary to the constitution and laws of the United States.

9. HABEAS CORPUS—DISCRETION OF COURT.

When such facts are shown, the writ of *habeas corpus* becomes a "writ of right," and the court having the power to issue it can exercise no sound discretion against issuing it.

*(Syllabus by the Court.)*

On Rule to Show Cause why Writs of *Habeas Corpus* Should not Issue.

The cases of the two petitioners are precisely alike, and they will therefore be considered together. In their petitions they allege that they were, on the ———— day of September, 1889, indicted by a grand jury, so called, impaneled by the United States court for the Indian Territory, for the crime of larceny; that on the ———— day of September, 1889, they were tried upon said indictment by a petit jury in said court. They were by said jury convicted on said charge; that on the 9th day of September, 1889, the court, upon said verdict of guilty, entered judgment against them, and sentenced them to one year's imprisonment in the jail at Muskogee, where they are now confined; that the said parties are now illegally imprisoned; that they are restrained of their liberty contrary to the constitution and laws of the United States, because said indictment was found by a grand jury that had no legal existence, as it was impaneled without authority of law; that the court had no legal authority to impanel a grand jury; that the indictment found by it is a nullity; that they are entitled to the writ of *habeas corpus*, that the legality of their imprisonment may be inquired into.

*M. H. Edmiston* and *Wm. H. H. Clayton*, U. S. Dist. Atty., for petitioners.

*Z. T. Walrond*, U. S. Atty., for the Indian country, in opposition.

PARKER, J., (*after stating the facts as above.*) This court has no jurisdiction, by writ of error or appeal, to pass even on the jurisdiction of the court at Muskogee. By such means it would have no right to inquire into the cause of imprisonment of a party restrained of his liberty, no matter how illegal such restraint might be. But if the illegality of restraint grows out of a sentence imposed, or any order of imprisonment which the court could not make for want of jurisdiction, the want of jurisdiction may be inquired into by this court by a *habeas corpus* proceeding; and upon the hearing of such a case the court, or any judge thereof, may make such inquiry as is necessary to enable it to see whether the jurisdiction of the court has been exceeded, or that there is no authority to hold the petitioner under sentence. The court may grant this great "writ of right" in every case where a party is restrained of his liberty anywhere in the territorial jurisdiction of the court, against the constitution and laws of the United States, or the petitioner is deprived of his liberty without due process of law. This may be so done by an order or proceeding of a state court, or any United States court, or by a person outside of a court; and if so done in the territorial jurisdiction of a United States circuit or district court, such courts, or any judge thereof, may, upon proper application, issue a writ of *habeas corpus* to inquire into the jurisdiction of a court, or the want of authority in such court, to restrain a party of his liberty. The jurisdiction of the circuit and district courts within their territorial jurisdictions to issue this writ is the same as the supreme court of the United States within its territorial jurisdiction, which is the whole United States.

When the supreme court will review the proceedings of an inferior court by *habeas corpus*, a United States circuit or district court has the power, within their territorial jurisdictions, to inquire, in a case where a party is restrained of liberty by the order of a court, whether that court had jurisdiction to make the order, or had authority to restrain the party of his liberty. The state of case which must exist to warrant the invocation of this writ is clearly settled in *Ex parte Wilson*, 114 U. S. 421, 5 Sup. Ct. Rep. 935, and the numerous authorities there cited. All these authorities give to the courts having jurisdiction the right by *habeas corpus* to inquire whether the court restraining the party of his liberty has jurisdiction to do so. The court, in its inquiry to ascertain the existence of jurisdiction, will look into so much of the proceeding as will enable it to determine whether jurisdiction exists or not. *Ex parte Lange*, 18 Wall. 163; *Ex parte Parks*, 93 U. S. 18.

It was claimed in argument that each court is the judge of its own jurisdiction. That is true to a certain extent. But it cannot so adjudge its jurisdiction as to deprive a person of the right, by *habeas corpus*, to ask a court having jurisdiction to issue the writ to make inquiry to see if there has been a rightful exercise of jurisdiction. This is sufficient on the motion to dismiss the proceedings in these cases for want of jurisdiction in this court to issue the writ.

The cases of James Farley and Robert Wilson, who petition for a writ of *habeas corpus*, are exactly alike as far as the question of jurisdiction is concerned. They were charged by an indictment found by a grand jury impaneled by the court at Muskogee with the crime of larceny. Jurisdiction in a court to try a case means jurisdiction over the place, the person, and the subject-matter. That there may be a subject-matter there must be an act that is a crime, and this act must be properly and legally presented before a court. These petitioners were tried and convicted upon an indictment, and sentenced to jail upon that conviction, where they now are. As far as these two cases are concerned, it will be sufficient to inquire whether the indictment against them was legally found, as they were charged in no other way than by indictment. The first question is, was the indictment in the case of Wilson and Farley legally found; that is, was the grand jury that found it a legal body? Has the court at Muskogee the power to impanel a grand jury? If it has not such power, the grand jury that found this indictment was an illegal body, and it had no power to accuse any one by indictment. All courts of the United States, whether they be the supreme court of the United States, circuit courts, district courts, United States territorial courts in the territories, or the court for the Indian Territory, established by the act of March 1, 1889, are creatures of the constitution, and the statutes passed in pursuance thereof, and they have only such jurisdictional powers as are conferred by the constitution or by statute. Has the court at Muskogee the power to impanel a grand jury? If it has not this power, there was no subject-matter properly presented in the case of Farley and Wilson upon which the court could proceed to try them. It must get this power from the statutes of the United States. It has no such inherent power, because it is a court created by a statute of the United States. All of its powers, as fundamental as that of impaneling a grand jury, must be found in the statute law of the United States, or they do not exist. Then this right of the court at Muskogee to impanel a grand jury must be found either in the act of congress of March 1, 1889, creating the court, or it must come from some other statute of the United States. The reading of the act creating the court shows an entire absence of any provision for a grand jury. This was no mere oversight in congress, as Mr. Culberson, chairman of the judiciary committee of the house of representatives, when, on February 28, 1889, presenting the final conference report of the two houses to the house of representatives, on the subject of the bill providing for a grand jury, said: "As the court is limited in its criminal jurisdiction to offenses below the grade of felony, no grand juries will be needed, and none are provided for." Congressional Record, vol. 20, p. 2459. This is the language of one of the law-makers; the language of the gentleman who, as chairman of the judiciary committee of the house, had charge of the bill in that branch of the law-making power. The statements of those who had charge of the law, made to the legislative body passing it, as to its meaning and purpose, are always competent. This statement as to the power conferred is fully borne out by the act itself. Unless there

is in this act express provision for a grand jury, the court does not have, by virtue of it, the power to impanel one. There is no express power of this kind in the law creating the court.

Does the court have that power by the general law of the United States? The only general law upon the subject of grand juries is found in sections 808 and 810 of the Revised Statutes of the United States. Section 808 provides that "every grand jury impaneled before any district or circuit court shall consist of not less than sixteen nor more than twenty-three persons. * * *" The remainder of the section provides a method for filling up the panel when a sufficient number do not attend, or where a challenge is sustained to the panel. Section 810 provides, when a grand jury shall be summoned to attend any circuit or district court, that it is to be done when ordered by one of the judges of the circuit court, or the judge of such district court. These two sections are the only two in the Revised Statutes which provide for a grand jury. It will be observed that the language of section 808 provides for impaneling a grand jury before a district or circuit court, and section 810 confines the summoning of a grand jury to a circuit or district court. These words, "circuit and district," as words of description, certainly have a meaning, and as such words they become words of limitation used to limit the character of the courts in which grand juries may be impaneled to the courts established by the laws of the United States, and by such laws named as circuit and district courts. The supreme court of the United States, in *Reynolds* v. *U. S.*, 98 U. S. 145, says:

"Section 808 was not designed to regulate the impaneling of grand juries in all courts where offenders against the laws of the United States could be tried, but only in the circuit and district courts."

This is an interpretation by the highest tribunal of the land of the meaning of the section which really needed no interpretation, as its meaning is manifest from its language.

Then, unless the court at Muskogee is a circuit or district court of the United States, it does not have the power, under the Revised Statutes, to impanel a grand jury. It is hardly necessary to add that it is neither. It is a court of the United States, but it is not a district or circuit court. The tenure of the office of its judge shows that, as he holds his office but for four years, while the tenure of the circuit and district judges is, as provided by the constitution, during good behavior, the court is not a circuit or district court. The nature of its civil jurisdiction, as conferred by the act of March 1, 1889, also shows its character to be other than that of a circuit or district court, for civil jurisdiction is conferred by that act upon this court that congress, under the constitution, cannot confer on a circuit or district court of the United States. Then the Muskogee court does not have the right to impanel a grand jury as an inherent right by virtue of its being a court. It does not get it from the law of its creation. It does not get it from the Revised Statutes, or any other statute. Consequently it has no such right. Not having such right the grand jury impaneled by it was an illegal body, and its charging persons with crime by indictment or information would be simply a nullity. A per-

son convicted and sentenced to imprisonment upon such an indictment would be illegally convicted, and illegally restrained of his liberty, and consequently would be held in custody or deprived of his liberty contrary to the constitution and laws of the United States. He would be restrained of his liberty without due process of law. When the fifth article of the amendments to the constitution provided, "no person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury," it meant a grand jury which was a legal body,—one impaneled by a court which had legal authority to so impanel it. When it appears to a court having jurisdiction to issue the writ of *habeas corpus* that a petitioner for the same is restrained of his liberty contrary to the constitution and laws of the United States, the writ becomes one of right, belonging to the citizen, and a court has no right to refuse it to him. The court can exercise no discretion against issuing it, but it must go as a matter of right.

To my mind the above views are decisive of the cases of Farley and Wilson. That they are held in custody without due process of law there can be no question, and consequently they are restrained of their liberty contrary to the constitution and laws of the United States, and therefore the writ of *habeas corpus* has become a writ of right, and the writ to bring them before the circuit court of this district must be issued; and it is so ordered.